## LOUISIANA STATE RICE MILLING CO., Inc., v. LAWRENCE et al.*

### No. 1351.

Court of Appeal of Louisiana. First Circuit.
June 11, 1934.

*Rehearing denied June 30, 1934. Writ of error refused Aug. 3, 1934.

Modisette & Adams, of Jennings, for appellant.

John B. Fournet, of Jennings, and Hawkins & Pickrel, of Lake Charles, for appellees.

ELLIOTT, Judge.

Louisiana State Rice Milling Company, Inc., alleges that it purchased from W. D. Jones, broker, 850 bags of Blue Rose rice for $1.65 a barrel, belonging to Clarence Lawrence, covered by bonded warehouse receipts held by. S. Goldsmith; that said purchase was made on or about April 13, 1933, and that said Lawrence and said Goldsmith both verbally confirmed the sale; that petitioner has been ready and willing at all times to carry out the contract, accept and pay for the rice as weighed and delivered in accordance with the custom and practice of the trade, and had so notified the defendants; that defendants refused and declined to consummate the deal or deliver the rice or specifically perform the contract, for the sole reason that the rice market had improved and the price had advanced practically a dollar on the barrel. In a supplemental petition alleging "fear that defendants will dispose of the property or place it beyond the reach of petitioner or out of the jurisdiction of the court," plaintiff caused the rice to be sequestered and taken in custody by the sheriff.

Plaintiff prays for judgment against Lawrence and Goldsmith ordering specific performance of the contract, and, in default of performance, for judgment against them in solido for $1,050.

Defendants appeared and moved the dissolution of the sequestration on the ground that the plaintiff did not purchase the rice and is not entitled thereto; that the rice belonged to defendant Lawrence, but bonded warehouse receipts covering same were held by defendant Goldsmith; that plaintiff's averments upon which it had obtained the sequestration were false and untrue. A few days later they filed as an exception against plaintiff's petition that it disclosed no right or cause of action.

The court, after hearing evidence on the motion to dissolve, giving written reasons, refused to dissolve the writ. The plaintiff then filed a second amended and supplemental petition alleging that since the institution of the suit defendants had bonded the sequestration and sold the rice. It prayed for judgment against them in solido for $1,050.

Defendants then filed an answer to plaintiff's original and first and second amended and supplemental petitions in which they denied that plaintiff had bought the rice from them and denied that they had confirmed any sale made to plaintiff or anybody else. They allege that E. D. Shipp solicited S. Goldsmith for an option on said rice for 48 hours for the purpose of putting it in a pool of 25,000 bags; that S. Goldsmith made a conditional agreement to place the rice in the pool, conditioned upon consulting his client Clarence Lawrence; that thereafter Shipp sought confirmation of his alleged option from Lawrence by representing to him that Goldsmith was going to sell the rice, whether he agreed to the sale or not; that Lawrence at no time gave his consent to the sale; that neither Lawrence nor Goldsmith were notified at the expiration of the forty-eight hour period that the option would be exercised and the rice was wanted for the pool; that no consideration was offered or paid for the option; that said contract, if any was entered into, was therefore null and void. In the event, however, it should be held that the contract amounted to a sale, then in that event they alleged that it was a conditional sale, condi-

tioned upon the consent of Lawrence, which consent was never obtained, or, if obtained, it was done through fraud and misrepresentation on the part of plaintiff's agent. They charge plaintiff with attempting to compel them to deliver rice which they had not sold.

Plaintiff moved to strike out this answer on the ground that defendants' motion to dissolve the sequestration was an answer to the merits, and prayed for judgments on the merits without hearing further evidence. The court overruled this motion, and, acting on the merits, held that a conditional sale had been agreed to between Goldsmith and plaintiff's agent, but that, plaintiff not having paid anything on account of the rice, its obligation to pay the price was exactly offset by the amount due the defendant on that account; that there had been no increase in price at the time plaintiff was entitled to delivery, and that plaintiff had therefore suffered no damage. Plaintiff's demand for damages was therefore rejected, but defendants were condemned to pay the cost.

The plaintiff has appealed.

The defendants answering the appeal, allege that the finding of the lower court that they had entered into a contract with the plaintiff for the sale of their rice was erroneous; that casting them for the cost was further error. They prayed that the judgment appealed from be amended and corrected in the matters mentioned. The exception of no right or cause of action filed by defendants is not urged and may be looked on as abandoned.

The plaintiff in its brief alleges three errors committed by the lower court as follows:

First. "The court erred in holding that the pleading filed by defendants on May 16th 1933 which denied every material allegation in plaintiff's petition, was not an answer, but truly a rule or motion to dissolve the writ." We do not see the propriety of acting on this refusal to order the motion to dissolve to stand as an answer to the merits. The question of ownership was necessarily entered into on the trial of the motion. Under Act No. 190 of 1912, all that plaintiff had to do on the trial of the motion in order to justify the issuance of the writ was to show that it was within the power of defendants to dispose of the property, and that fact appeared from the averments of the motion to dissolve. The lower court, in acting on the motion, did not act on the merits. It seems to us that this ruling has passed out of the case and is not reviewable on this appeal.

Second. The brief urges that the court erred in holding that, even if the merits were gone into, in acting on the motion to dissolve, and even though the motion to dissolve disposed of the case on the merits, the defendants had the paramount right to have the question of dissolution of the writ tested out in a summary manner. The contention is in effect substantially the same as the first one, clothed in different language. It has also passed out of the case. But suppose otherwise, the motion to dissolve was an incidental question of the kind contemplated by the Code of Practice, art. 755, which provides that: "Judgment shall be pronounced summarily on all incidental questions arising in the course of a civil trial."

Third. It is urged that the court erred in holding, after a trial of the case for the second time on the merits, that plaintiff suffered no damage, etc., although it had purchased the rice from the defendants. It is from this judgment that the present appeal was taken and the alleged error will receive our consideration; but, in connection therewith, in fact before entering into the question of plaintiff's right to recover damages, we must first take into account defendants' answer to the appeal and their prayer therein contained.

The sale from W. D. Jones to plaintiff set up in its petition is evidenced by a purchasing report on a printed form used by Louisiana State Rice Milling Company, Inc. It bears date April 13, 1933, and calls for 1,864 sacks of rice from Monk & Lawrence, which is about twice the quantity claimed in the suit. It is signed Monk & Lawrence by W. D. Jones. It names R. H. Oertling as the buyer. S. Goldsmith is not mentioned in the form of sale.

The testimony taken on the motion to dissolve the sequestration was offered in evidence by the plaintiff on the trial of the merits.

The question of ownership was fully entered into on the trial of the motion. The note of testimony made on the trial of the motion comprises practically all the important evidence on the question of ownership. Our reference to testimony therefore refers to the testimony taken on the trial of the motion, except when otherwise stated.

W. D. Jones as a witness testified that he had nothing to do with buying the rice from the defendants; that the matter was handled by E. D. Shipp. It appears that Jones was a broker representing the American Rice Growers' Association. He signed the name of Monk & Lawrence to the bill of sale and pre-

sented it to R. H. Oertling as buyer for the plaintiff, but the authority on which he acted does not appear.

Plaintiff introduced evidence the purpose of which was to show that the sale was consummated between S. Goldsmith, acting for himself and Lawrence, and E. D. Shipp, representing the American Rice Growers' Association, and R. H. Oertling, representing the plaintiff.

Clarence Lawrence, as a witness in his own behalf, testified that E. D. Shipp called on him and solicited his rice for the purpose of putting it into a pool; that Shipp sought of him an option on the rice for forty-eight hours. He told Shipp, he says, that he did not want to sell his rice, but that if Goldsmith sold it, it would be all right, as Goldsmith held the bonded warehouse receipts and he (Lawrence) could not help himself. Wm. Monk and Frank Lawrence were present at the time Shipp called on Clarence Lawrence, and Monk and Frank Lawrence corroborate Clarence Lawrence as to what was said to him by Shipp and Lawrence's reply thereto. It is clear that no sale nor confirmation of sale can be claimed under Clarence Lawrence. Goldsmith held the bonded warehouse receipts, and the serious question is whether plaintiff can claim under him.

Defendants, among other matters, aver in their answer:

" * * * Defendants show that E. D. Shipp did solicit defendant S. Goldsmith for an option on said rice for a period of 48 hours for the purpose of putting the rice in a pool of 25,000 bags, and defendant Goldsmith made the conditional agreement to place the same in the pool, conditioned upon his consulting his client Clarence Lawrence. * * * That thereafter E. D. Shipp sought confirmation of his alleged option from Lawrence by representing to Lawrence that Goldsmith was going to sell the rice whether he agreed to the sale or not, which representation was false and untrue to the knowledge of Shipp at the time it was made. That Lawrence at no time gave his consent to the sale of the rice, made by W. D. Jones. That said Shipp or any other representative of plaintiff at no time prior to the expiration of the 48 hour period informed Goldsmith or Lawrence that they would exercise the option they had requested, and made demand for the warehouse receipts necessary for them to complete the transaction by weighing the rice and paying for the same.

"That no consideration of any kind was offered or paid for the option sought by plain-

tiff on said rice and said contract, if the same had been made, which defendants deny, would have been null and void.

"Further answering in the alternative and in the alternative only, in the event it is held that the transaction was a sale, then it was conditioned upon the consent of Clarence Lawrence, which was never obtained, or in the alternative, if obtained, was obtained through fraud and misrepresentation on the part of plaintiff, through its agents, in representing to Lawrence that Goldsmith would sell his rice whether he consented or not."

It seems to be conceded that Goldsmith, as holder of the bonded warehouse receipts, had power and authority to sell the rice to anybody and at any time that he cared to do so and could act without the consent of Lawrence. Goldsmith testifying on the subject says that Shipp requested of him an option on the rice, the purpose of which was to put it in a pool; that he told him it would be all right on his part, but that he never sold unless he consulted his customer, meaning Clarence Lawrence; that he did not consult Lawrence because he saw no occasion to do so, not having been informed by the plaintiff nor its agent within the 48 hours or at any other time except as will be stated later that plaintiff wanted the rice for the pool; that he was informed about ten days afterwards that the rice was wanted, but during the delay the price had taken an upward rise. He then maintained to plaintiff's agent that its option or right to claim the rice had expired and declined to deliver the rice. He testified that no price was paid him by plaintiff at any time for an option or otherwise. It cannot be said from Goldsmith's testimony that he committed himself to anything definite concerning the sale of the rice, except that for a period of forty-eight hours it could be taken to make up the 25,000 bags; but when this forty-eight hours was to commence or terminate nothing was said.

Shipp accompanied by R. H. Oertling called on Goldsmith concerning the rice. As showing the indefinite replies of Goldsmith concerning the part he was to take in forming the pool, we copy a part of the testimony of Shipp and Oertling. Questions put to and answers of Shipp:

"Q. What was the result of that conference? A. It was satisfactory.

"Q. What do you mean by satisfactory, Mr. Shipp? A. Well, I took it for granted that it would be O. K.

"Q. Did you offer to buy or sell rice for Mr. Lawrence or did you ask for just an op-

tion on it? A. Well, it was conditional, in this respect, as I understood from Mr. Jones that the Louisiana State would take the rice provided there was 25,000 bags of it confirmed. * * *

"Q. Did you ask for an option with Mr. Lawrence or Mr. Goldsmith? A. I do not believe that an option was mentioned. It was merely a fact that the rice was sold, if there was around 25,000 bags of it.

"Q. Did you ever report to them after you got the 25,000 bags? A. No, sir. * * *"

Shipp took things for granted. He understood that Goldsmith was to put the Lawrence rice into the pool, but we do not gather from his testimony taken as a whole that Goldsmith entered into any definite agreement with him on the subject.

It was the same with Oertling; he took too much for granted. Oertling says that Goldsmith told him in the presence of Shipp that the sale was O. K.—something like that. Goldsmith, he says, confirmed the sale, but it cannot be said by reference to Oertling's testimony that Goldsmith entered into any definite agreement with him to put his rice into the pool.

He quotes Goldsmith as saying to him: "Mr. Oertling I am told you bought the rice; I think it is fine, fine. Yes, he confirmed it to me." They had talked about a purchase which Oertling had made from another party named McGuire; therefore when Goldsmith congratulated Oertling, saying, "I am told you bought the rice; I think that is fine, fine," for all we know Goldsmith may have been referring to Oertling's purchase from McGuire. It is only by looking at the admission in Goldsmith's answer that we can find that he entered into an agreement with Shipp and Oertling whereby his rice for forty-eight hours might be taken into the pool, conditioned upon his consulting Lawrence. And he did not consult Lawrence because he says the stipulated period of time passed and neither Shipp nor Oertling notified him that the pool was formed and his rice was required.

The evidence indicates that there was a forty-eight hour period of time stipulated during which the rice might be claimed by plaintiff, but the time passed and there was nothing done or said by plaintiff's agent indicating that the rice would be taken or wanted under the agreement.

Matters rested in abeyance until about a week afterwards, and after rice had taken a decided upward rise, when W. D. Jones, who is alleged to have purchased it, sent a man named Gibson to Goldsmith's place of business in the town of Welsh to obtain the warehouse receipts. Upon reaching the place, Gibson found that Goldsmith was not at home, and Julius Goldsmith, defendant's son, in charge of the store at Welsh, gave Gibson an order on the warehouse man to deliver the rice to Oertling; but the warehouse man refused to deliver the rice unless the bonded warehouse receipts were surrendered. S. Goldsmith had carried these receipts with him to Eunice.

After the warehouse man had refused to deliver the rice, it appears that Oertling waited two or three days longer, doing nothing, making no effort to carry out the contract which he claims was entered into, waiting, he says, for S. Goldsmith to return. When Goldsmith did not return, Oertling, accompanied by Shipp, proceeded to visit him at Eunice and called on him for the warehouse receipts. Goldsmith informed him that there had been no sale, that he was too late in claiming the rice, and refused to give him the warehouse receipts.

An effort was made to show by Richard Smith that S. Goldsmith, in a conversation with him while the formation of the pool was being talked of, admitted that the Lawrence rice had been put into the pool and sold to the plaintiff. But the testimony of Smith in repeating the conversation between him and Goldsmith leaves it so uncertain as to what Goldsmith really said that no admission, as claimed, can be said to have been made. On the trial of the merits Clarence Lawrence and S. Goldsmith again went over the subject of the alleged sale and of the conversation between them, respectively, and Oertling and Shipp, but nothing new on the question of ownership was brought out.

██ The burden of proof is upon the plaintiff to show a sale of the rice from Lawrence and S. Goldsmith, as alleged in its petition. The testimony on the subject is not sufficient to establish that Lawrence or Goldsmith ever entered into any unconditional agreement for the sale of the rice. There was always attached a condition, which the plaintiff was to perform, and there was never any performance. The time fixed during which the condition was to be performed was allowed by plaintiff to elapse and pass without performance and without any stipulation for an extension of time. Oertling and Smith both admit that no notice was given to Goldsmith or Lawrence at the expiration of the forty-eight hours that the rice would be taken and paid for. There was nothing said as to when the forty-eight hours was to commence. It seems

reasonable therefore that the time would commence to run from the end of the day on which the stipulation was made, and we hold accordingly, but, in view of the purpose of the pool, let us suppose otherwise; the law would then fix by implication a reasonable time for the 48 hours to commence to run and within which the rice must be taken, and notice to that effect given by the buyer to the seller. The buyer could not wait day after day to see if the price was going to advance and, when the rise commenced, then compel the performance of the agreement.

In this case it appears that about ten days had passed after the agreement before plaintiff called on Goldsmith at Eunice to deliver it the warehouse receipts. During this time the rice market had undergone a decided change; the price, it seems, was at least a dollar a barrel more than it was at the time the agreement was entered into.

The decision of the Supreme Court in Garrison & Son v. Sherill Hardwood Lumber Company, 156 La. 147, 100 So. 253, 254, has some application. In that case about eleven months elapsed after cross-ties should have been delivered before performance was demanded. The tie market is not subject to rapid change like the rice market, but the language of the court referring to the delay and the changed conditions in the matter of price may be appropriately quoted: "However, the creditor cannot be permitted to demand the performance of the contract, after an unreasonable delay and in the face of an advancing market, as such damages are speculative, and were not in the contemplation of the parties at the time the contract was made."

In this case plaintiff's right to exact performance of defendants' undertaking depended on a reasonably prompt compliance with the conditions with which it impliedly bound itself, and it was not done, and therefore Goldsmith was discharged and released from any obligation to deliver the rice. We shall place our judgment on that ground; but, if we are in error in doing so, still plaintiff cannot recover the damages claimed in its petition, because then the finding of facts on the part of the lower court is correct and damages should be refused on that account, as was done in the judgment appealed from.

For these reasons, acting under the provisions of the Code of Practice, art. 888, the judgment appealed from holding that Clarence Lawrence and S. Goldsmith entered into a contract with the plaintiff Louisiana State Rice Milling Company, Inc., whereby the said Lawrence and the said Goldsmith would have been obliged to deliver 850 bags of Blue Rose rice described in its petition had said rice been paid for, is annulled, avoided, and set aside and plaintiff's demand on said account is refused and rejected.

All the cost incurred by and directly growing out of the rule to dissolve the writ of sequestration issued herein is to be paid as ordered by the lower court in acting on said motion.

All other cost in the lower court and the cost of appeal are to be paid by plaintiff appellant.